**JENKINS & CLAYMAN**
Jeffrey E. Jenkins Pike
Audubon, New Jersey 08106
(856) 546-9696
Attorney for Debtor

| | |
|---|---|
| IN THE MATTER OF: | UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY |
| Joseph and Lindsay Rieger | CHAPTER 13 CASE NO. 16-31140 ABA |
| Debtors | DEBTOR'S CERTIFICATION OBJECTING TO FEE APPLICATION FILED BY STEVEN NEUNER, ESQUIRE |
| | HEARING DATE:   April 13, 2017 |

I, Joseph Rieger, by way of certification hereby state:

1.      I am one of the Chapter 13 debtors and I am authorized to make this certification.

2.      I would ask the court accept this certification as our objection to the fee application filed by our former Chapter 13 attorney, Steven Neuner, Esquire, which application is scheduled for hearing on April 13, 2017.

3.      After we had spoken with Jenkins & Clayman about taking over as our attorneys in our Chapter 13 case, we received the attached fee application from Mr. Neuner. My wife and I were surprised to receive this fee application given the fact that our fee arrangement with Mr. Neuner was for him to perform the ordinary and necessary legal services in a Chapter 13 for a fixed fee of $3500 plus we had to pay him $480 for costs (even though the cost for filing a Chapter 13 is only $310).

4.      At a recent meeting with Mr. Jenkins, we showed him the fee application and talked to him about why we felt it was incorrect and inappropriate and asked him to file this objection. In reviewing this fee application, it seems to us that almost every item in it, (I numbered the items in the attachment to allow for easy reference to a particular line item) are just the normal and usual things an attorney should be doing to represent a client in a Chapter 13 case. We do not understand how Mr. Nuener can have us sign a fee agreement and for him to file form 230 with the court saying

that he is doing this Chapter 13 for $3500 and then turn around and file this fee application asking for more than $2600 in additional fees.

5.  For example, line 23 contains a charge of $487 for attending our 341(a) hearing when that was one of the items that was specifically mentioned as being included in the $3500 fee. It makes me wonder what we got for $3500. It seems to us that all we got for $3500 was shaking Mr. Nuener's hand and then he went ahead and billed us for everything that should have been covered by the fee we were quoted and agreed to pay.

6.  Mr. Nuener never told us that our case was complicated. In fact, when we met with Mr. Jenkins he was able to understand exactly what was going on and tell us what we needed to do. Specifically, after looking at our income figures, he told us that our income was so far above the average income for a family of four in New Jersey that the second part of the means test would result in us having to pay our creditors in full. This assessment is reflected in the means test that Mr. Nuener completed and I should point out that the calculations of our income as well as the calculations of the means test are probably low. I am presently making about $115,000 a year and my wife makes $58,000 a year in salary. (a total of $173,000) We have $26,081 in unsecured debt plus money owed to the IRS.

7.  Mr. Nuener asked for pay stubs quite a few times and when he did we emailed him our pay stubs. In fact, he received all of our pay stubs since November, and yet we would meet with him and he would look at my overtime paycheck thinking that was my normal paycheck and not understand what he was going to do with the case.

8.  In other words, a lot of the time that is on this fee application is because Mr. Nuener lacked a sense of recall of our case or organization to recall our specific income and expense profile. Had he understood he received all of our paystubs, he would not have been performing means test calculations over and over again. He would even do the means test calculations when we were sitting in his office sometimes.

9.  After our confirmation hearing was adjourned to April 12, 2017, Mr. Neuner told us

that there was not anything else he could do for us. He said we should just let our case be dismissed.

      10.    When we met with Mr. Jenkins, he told us he would modify our plan to pay the unsecured creditors in full and pay all the priority and secured creditors as well. Plus we wanted to put in some post petition taxes that were owed to the IRS and the State of New Jersey. He prepared our plans so that our student loans are being paid outside of the plan as a long term debt and Mr. Nuener never mentioned the possibility of doing this. Mr. Jenkins told us that we could pay for our mortgage arrears in the plan or we could ask to get a loan modification. This is how we wanted him to prepare our plan modification, and if we are not able to get a loan modification from our mortgage company, we can modify the plan again to pay the arrears through the Trustee. In other words, after having Mr. Nuener tell us that there was not anything else he could do for us and he wanted our Trustee payments to be more than $2,000 a month and telling us we should just let our case get dismissed, we go to another attorney who is able to quickly and concisely decide exactly what to do with our case to make it work for us.

      11.    On line 25 of Mr. Nuener's fee application, he did say that he amended scheduled B and C. I can see being charged something additional for this. As far as the costs, they are identified as item number 58; our concern, credit reports can be obtained for free and he charged us $70 for a credit report. Credit reports have your judgments on them so I do not know that a judgment search was even necessary. He also charged us fees for mileage to and from the 341a hearing and our confirmation hearing. He never mentioned anything like this before and I did not think attorneys were able to ask for this type of expense in a Chapter 13 case. Again, it seems to me that he knew he would be traveling to a 341a meeting and a confirmation hearing when he agreed to do our Chapter 13 for $3500.

      12.    I understand that in reviewing a fee application, one of the things the court should look at are the results obtained. Mr. Nuener never completed our case. Rather, as I mentioned several times above, he told us there was nothing he could do for us, and suggested we should allow our case to get dismissed.

13. For all the foregoing reasons, we ask that this fee application be denied and ask further that Mr. Nuener be allowed some lesser amount than the original $3500 since he did not get our plan confirmed.

I certify that the foregoing statements made by me are true. I am aware that if any of the

foregoing statements made by me are willfully false, I am subject to punishment.


Dated: _____

_____
Joseph Rieger
Debtor

**SERVICE LIST**

Document    Page 6 of 6

**STANDING CHAPTER 13 TRUSTEE:**

Isabel C. Balboa, Chapter 13 Trustee
535 Route 38
Cherry Hill, NJ 08003

**DEBTOR:**

Mr. and Mrs. Rieger
469 Concetta Drive
Mt. Royal, NJ 08061

**FEE APPLICANT:**

Steven R. Neuner, Esquire
Willow Ridge Executive Office Park
750 Route 73 South-Suite 210
Marlton, New Jersey 08053-4133